(Decided July 29th, 1859.)

---

JOHN GREGG and others, *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

The Baltimore and Ohio Rail Road Company passed a resolution declaring an extra dividend, payable on a certain day in certificates of indebtedness, bearing interest and convertible, after a certain date, into stock. Upon a bill filed by the Mayor & City Council of Baltimore, as stockholders, against the company, an injunction was granted restraining the issuing of this dividend. To this bill the company filed an answer, and moved for a dissolution of the injunction, but whilst the argument on this motion was progressing, the company directed their solicitor to ask leave to withdraw their answer and to dismiss the motion, and the motion was accordingly dismissed. A petition was then filed by certain other stockholders of the company, alleging that their rights and interests were injuriously affected by the continuance of the injunction, and asking leave to appear and be made defendants, and to move for its dissolution. This was refused and their petition dismissed, and, on appeal, the order so dismissing their petition was affirmed by a divided court, but, HELD:

That before final decree, the petitioners ought to be heard as parties, and that if they be not, and are shown to be prejudiced because of the refusal, on appeal, after final decree, the decree will be held to be of no avail as against them, and will be reversed or the cause remanded, under the Act of 1832, ch. 302, that the proper parties may be made.

Where the court is equally divided in opinion on a motion to dismiss an appeal, and also on the propriety of the order appealed from, the order must be affirmed.

APPEAL from the Circuit Court for Baltimore City.

The Board of Directors of the Baltimore and Ohio Rail Road Company adopted, on the 17th of December 1856, a resolution for an extra dividend, in which, after reciting, by way of preamble, that there has been appropriated by the company, from time to time, the sum of $3,000,000, and upwards, of the net earnings of the main stem of the road, to the purpose of construction, with the intention, in conformity with the practice of the company, of paying the same to the stockholders in the shape of a dividend, at such time as they might deem judicious, it is provided that an extra dividend of thirty per cent. be declared on the stock of the company, to be paid on and after the 12th of January 1857, to all stockholders owning stock on the 22nd of December 1856, in *certificates of indebtedness*, bearing an interest, from the 1st of June 1857, of six per cent. per annum, payable half yearly, on the first day of December and June in each year, until the 1st of June 1862, inclusive, after which said certificates of indebtedness shall be converted into the stock of the company at par, and blank forms of certificates were prepared by the company to be issued to the stockholders, in conformity with this resolution.

On the 10th of January 1857, the Mayor and City Council of Baltimore, who were owners of $3,500,000 of its stock, and also creditors in the sum of $5,000,000, secured by mortgage, filed a bill in the court below against the Rail Road Company to annul the above resolution, and for an injunction to restrain the company from issuing and delivering these certificates of indebtedness. This bill states, that from the year 1830 to the present time, a part of the surplus profits of the road, amounting to $3,000,000, has been applied to the construction and reconstruction of the road, its repairs, the building of bridges, making sidelings, to the purchase of real estate and depots, and for numerous other substantial and permanent improvements, but denies that such use and employment of these surplus profits created any indebtedness on the part of the company to its stockholders or any one else, or that the company had any power, under its charter, to make them the subject

of a dividend. It further charges that the transaction now contemplated by the above resolution is substantially an increase of the capital stock of the company, and a multiplication of its shares of stock, which the company has a right at any time to accomplish, under the 13th sec. of its charter, but even when viewed in the light of a present increase of the shares of stock, the resolution is illegal and inoperative, inasmuch as it creates a species of preferred stock not authorized by any provision in the charter of the company. The bill also further charges that by the 7th sec. of the charter of this company, the complainants (the Mayor and City Council of Baltimore) are entitled to appoint a director for every twenty-five hundred shares of stock owned by them at the time of the annual election of directors of the company, and complainants are informed and believe, and therefore charge, that a majority of the said board of directors did, with a view to defeat this right of the complainants to appoint directors according to their proportion of said $3,000,000 of stock, adopt the plan of ostensibly treating said surplus profits as constituting a debt due from the company, well knowing at the time that no such debt existed, but designing thereby to defraud the complainants out of their chartered rights and power to appoint an additional number of directors as aforesaid.

Upon this bill the court granted an injunction, as prayed, and, on the 21st of January 1857, the railroad company appeared and filed its answer under its corporate seal, which was subsequently verified by the oath of its President, made in open court on the 2nd of February 1857. This answer admits that since the year 1830, surplus profits have been earned by the company amounting, on the 1st of October 1856, to $3,833,071.75, over and above the dividends in stock, money and bonds from time to time paid, and that $3,000,000 of these surplus profits have been applied to the construction and reconstruction of the road, as charged in the bill, but denies that the company had no power, by its charter, to declare the dividend in question, and, on the contrary, insists that they have such power, and that the dividend, in the shape in which it has been declared, is entirely legal, and has been so decided

to be by the Court of Appeals in 6 *Gill*, 363, upon a state of facts identical with those existing in the present case. The answer also denies the averment of the bill, that a majority of the Board of Directors, with a view to defeat the right to appoint directors, adopted the plan of ostensibly treating this surplus as constituting a debt due from the company, and knowing, at the time, that no such debt existed, but designing thereby to defraud the complainants out of their chartered rights to appoint an additional number of directors, and insists that such averment is absolutely untrue.

At the same time with the filing of this answer, a motion to dissolve the injunction was made and set down for hearing. An order was then passed allowing testimony to be taken before a commissioner, relative to the allegations of the bill, to be used at the hearing of the motion to dissolve, under which a large mass of testimony was taken and returned. On the 23rd of March 1857, whilst the argument on the motion to dissolve was going on, the Board of Directors of the railroad company passed resolutions which declared that the above answer had been filed without having been submitted to the Board, and, if allowed to stand, might prejudice the company in other suits or controversies in relation to this dividend, and instructed their solicitors to ask leave of the court to withdraw said answer, in order that an answer, sanctioned by a majority of the whole Board, may be hereafter filed, and for that purpose, to dismiss the pending motion to dissolve the injunction. In obedience to these resolutions, Mr. Latrobe, the solicitor of the company, on the next day, (24th of March 1857,) filed a petition asking leave to withdraw the answer, and to dismiss the motion to dissolve. The court ordered the leave to dismiss to be granted, the solicitors of the complainants being in court and making no objection, and, in pursuance of this leave, the motion to dissolve was dismissed.

At this stage of the cause, and on the same day, (24th of March 1857,) the present appellants, who are and were, on the 22nd of December 1856, the holders of 12,619 shares of the stock of the Rail Road Company, and therefore entitled to certificates of indebtedness under the extra dividend resolution of the

17th of December 1856, filed their petition, in which, after stating, their respective interests as such stockholders, they allege that the other stockholders are very numerous and dispersed, so that it would be impossible to make them all co-petitioners, and they, therefore, pray that this petition may be taken as filed for all persons having concurrent interests in the dividend, who may desire to make themselves parties on just terms to be imposed by the court, and that all the previous proceedings and papers in the cause may be taken as part of this petition. The petition then states that since the commencement of the argument on the motion to dissolve, the petitioners have been informed that by reason of some proceedings of the Board of Directors of the Rail Road Company, called in special session, it was resolved, that the counsel of the company should withdraw the answer, the effect of which would be, if allowed, without some action at the instance and on behalf of the petitioners, that the motion to dissolve will cease to be argued, and the injunction continued indefinitely, to the prejudice of the petitioners and others in like interest, who are interested in said extra-dividend. It then states that the injunction should not have been granted, because no person or party was made defendant, who was or could be injuriously affected by it; that the dividend became on the day it was promised to be executed by the delivery of certificates of indebtedness, the property of the respective sharcholders, and that the Rail Road Corporation has no adversary interest to the granting of the injunction, but the only adversary interest is in the petitioners and others in like interest, or as assignees from other shareholders of said dividend; that the injunction grievously affects the petitioners and others in like interest, and yet has been granted to their injury, without their having the formal opportunity of being able to move for its dissolution by being defendants to the bill, or to call for an adequate bond to protect their rights; that they do not know whether they or others sufficient to make a substantial representation of the interest of shareholders, were left out, as defendants, through error or by design, to injure their interests, and to afford an opportunity to the complainants and defendants through their counsel and directory so to control the suit that it should injure the

petitioners, without their having the power to approach in this cause, the justice and equity of the court for redress, but they prefer to suppose no such professional device was intended, and that the complainants' counsel supposed the interest of the petitioners are in law represented by the defendant, which the petitioners deny; that if the dividend is legal the Railroad Corporation is the debtor of the petitioners and others in like interest, who have since the 12th of January last, demanded delivery of the certificates of indebtedness promised by the dividend-resolution, which they aver they have so demanded for themselves respectively, and the petitioners cannot understand how a debtor represents the interests of his creditors, and how an injunction can be granted and continued to keep in the debtor's hands the dues of the creditors with no power to the latter, who alone are affected by the injunction to move for its dissolution; that the petitioners are informed and believe the injunction was improvidently granted, and that when the attention of the court is called to its prejudicial operation on the petitioners and others in like interest, the court will order it to be at once dissolved, unless the complainants will make the petitioners defendants to the bill, so that they may be bound by the decree in the cause, and so that they may make such motion and take such other proceedings as will prevent the action of the complainants and defendants from unjustly acting on the petitioners' interests at once, with all the force for the time of a decree against them. The petition then states that eight members of the Board of Directors of the Railroad Company are appointable by the complainants, and that these eight, who are now members, all voted on the 23rd of March for the resolution to dismiss the motion to dissolve and to withdraw the answer, and have been chosen since the institution of this suit, and that three of the eight members, appointed by the complainants, who voted for the dividend, were not returned as directors by the complainants at the annual election in January last; that the answer had been filed before the 2nd of February, and sworn to by the President of the company, and was published in the newspapers of the city, and though regular meetings of the Board

of Directors had occurred on the second Wednesday of February and March, no measures were adopted, and at the February meeting no measure proposed to withdraw the answer. The petitition then asks that the answer be not allowed to be withdrawn, and that the petitioners be allowed to appear, be made defendants, and move for the dissolution of the injunction and at once proceed with its argument. Then certain of the petitioners, who are named, who were directors when the dividend resolution was passed, claim in the petition that the bill charges on them personal fraud in ostensibly treating as a debt of the company what they knew had no existence as such, and that with this view the form of the dividend was adopted to defraud the complainants of their chartered right of appointing directors, and they claim the right to be made parties, that these allegations may be answered and disproved, and insist that the injunction shall be at once dissolved, unless the complainants will make the criminated directors, and among them the petitioners in question, parties to the bill as defendants. The petitioners then state that though they have many and important matters which they could allege and which should be properly alleged for the protection of their rights and characters, yet, as they can be entitled to them before the final hearing, without their answers being filed at present, yet the continuance of the injunction so injuriously affects their interests, that they are willing, on the answer of the defendants and on the testimony already taken in the cause, to become parties and move for the dissolution of the injunction, and proceed at once on its argument, and they, therefore, pray the court to grant them the relief asked, or such other as their case justifies.

To this petition, the complainants (the Mayor and City Council of Baltimore) filed an answer in which they admit that the petitioners are stockholders as stated in their petition, and that the stockholders of the Railroad Company are very numerous, but they positively deny having given any instruction or direction to their counsel in respect to the party or parties to be made defendant or defendants in or by their bill, but that they have understood from their counsel and believe, and

therefore aver that the Railroad Company was made the sole and only defendant by the bill, not through any design to injure and embarrass the interests of the shareholders, or to afford an opportunity to these respondents as complainants and to said company as defendant, to control said suit to the injury of the petitioners, or any other of the stockholders, as is alleged in the petition, but became their counsel after full consideration, were then and still are of opinion that the interests of all the stockholders of said company are and may be substantially and legally represented and protected by the company as defendant in the suit, which opinion, they, by their counsel, are ready and willing to maintain to be good and valid in law. They deny that there has been or is any collusion between them and the directors of the company, or any of them in regard to any proceedings in this suit, or to prevent it from being decided after a full and fair investigation of its merits. They also most positively deny, for themselves and their counsel, that in framing and preparing the bill, they had any purpose or intention by any averment therein, to impute to the petitioners, or to any of them, any moral delinquency or actual fraud, or in any manner to cast reproach upon their characters or injure their reputation in society; and they further state that they are informed and believe, that their counsel have repeatedly, both publicly and privately, explicitly disavowed any such intention on their part; wherefore they insist, that upon the ground of any averment in the bill on which the petitioners may have put a different construction, they are not entitled to be made parties to this suit, more especially for the purpose of controlling either of the present parties to the cause in their conduct and management thereof, as is set forth in the petition. Wherefore, these respondents insist that the petitioners have no right to interfere, or to be made defendants in this cause, or in any manner to interpose or interfere with the proceedings therein.

Upon this petition and answer, and after full argument, the court (KREBS, J.) delivered an opinion, in which, after stating the facts of the case, as above set forth, he says:

"These petitioners insist upon their right to appear in this

case, to be made parties defendants and to move for a dissolution of the injunction; and, necessarily, to their right to file an answer to the bill, inasmuch as, according to our practice, no defendant can move to dissolve an injunction until he has filed his answer; or, in other words, upon the right to come in before the motion to dissolve is made, and be made full defendants. Now, I have not been convinced by the arguments and authorities relied upon by the solicitors of the petitioners, that they are entitled to this right; assuming, even, in their favor, that this dividend is lawfully declared; that they are entitled to it; that they are interested in this cause, and ought to have been parties to the bill, and are not represented on the record. They claim thus to be made parties defendants, upon their own demand, by petition, because they are interested in the subject-matter, and objects and purposes of the suit, and ought to have been introduced into the bill as parties, before it was filed. They say, in effect: 1st. That the bill is defective for want of parties. 2nd. That the court should require the complainants to amend it, by making them parties.

"Can these petitioners, in this mode, object that this bill is defective for the reason alleged, and thus drive the complainants to an amendment? For that is the extent to which their pretensions go. If they have such right, it might be reasonably presumed that it could be readily shown by reference to the treatises upon the Practice and Pleadings in Courts of Equity, where the rules, long since settled, in regard to the mode of introducing into a cause parties improperly omitted, are clearly defined. I have carefully examined these treatises, and do not find that any one of them, in pointing out the several modes of taking an objection for want of parties, mentions that the omitted party, himself, has a right to appear and make the objection that he has not been joined in the suit, and force the complainant to amend. *Mr. Calvert*, in his treatise on *Parties to Suits in Equity*, which, in *Story on Pleading*, is said to "contain the fullest and most systematic review of the principles which regulate the subject, as well as the most complete collection of the authorities," mentions but four modes of taking an objection for want of parties, viz: by demurrer

on record; by answer; by plea, and by demurrer at bar. These are modes of objecting that can be adopted by the *defendant alone,* and in no part of the chapter in which he treats of the various modes of making this objection, does he say or intimate, or furnish or refer to, any authority for maintaining that the party who has been improperly omitted as a defendant, can make the objection of want of parties, and require that he should be added by way of amendment. *Daniell,* in his *Chancery Practice, Vol.* 1, *page* 333, *sec.* 3, entitled, *" Of Objections for Want of Parties,"* enumerates the four modes above mentioned, as those only by which a person can make the objection, and gives no opinion or authority for insisting that the party omitted can object. But these authors mention, as do some others, as will appear from subsequent references, that the court at the hearing may, itself, "state the objection." *Story* in his *Equity Pleading, section* 75, states, very distinctly, the mode of remedying the defect of want of necessary parties: "If the proper parties are not made," he says, "the defendant may demur to the bill, or take the objection by way of plea, or answer, or when the cause comes on to a hearing; or the court, itself, may state the objection, and refuse to proceed to make a decree." In 1 *Bland,* 292, the chancellor designates the same modes of taking the objection, and no others; and, in *Shields vs. Barrow,* 17 *How.,* 145, the Supreme Court of the United States state the practice, in this particular, in such terms as to exclude any such claim of a right to intervene, as is set up by these petitioners; they say: "If the plaintiff desires to make new parties, he amends his bill and makes them. If the interest of the defendant requires their presence, he takes the objection of non-joinder, and the complainant is forced to amend, or his bill is dismissed. If, at the hearing, the court finds that an indispensable party is not on the record, it refuses to proceed. *These remedies cover the whole subject."* After a careful examination of the several elementary authors on this subject, I have become fully assured, that not one of them mentions, or recognizes, any such rule or practice as would justify this court in granting the prayer of these petitioners, and permitting them, upon

Gregg, *et al.*, *vs.* The Mayor & C. C. of Balto.

their own demand, to be made defendants in this cause, by amendment of the proceedings. It is true that they all refer to "some cases in which the court has allowed persons, who have not been made parties, to take *some part* in the proceedings," (17 *Law Lib.*, *Calvert on Parties*, 35,) and their authority for saying that the court sometimes grants this permission, rests upon cases which I shall hereafter refer to; and it will be found that these cases, with a few exceptions, belong to a class in which, *after a decree*, or *a reference to a master*, persons who had not been made parties to the cause, but who were interested in the estate affected by the decree, or in regard to which, or to the parties interested therein, the master was charged to enquire and report, were permitted to *come* in, by petition, and *urge their claims before him*, a class of cases differing altogether from this. To this class of cases, *Story* evidently alludes in his *Equity Pleading*, *section* 208, a reference much relied on by the solicitors for the petitioners, where he says that, "a court of equity will, *sometimes*, as a *matter of indulgence, allow persons not parties, to bring forward their claims*, by petition, in order to have their *interests ascertained* and *their rights protected*," because he relies for this position on the case of *Drew vs. Harman*, *alone*, 5 *Price*, 319, 324, in which *cestui que trusts* were simply let in, *on their petition, to participate in a fund in court*. The only case mentioned by *Calvert* in his entire treatise, not belonging to this class, is the case in *Mosely*, (which I will hereafter consider,) and the conclusion to which he comes, after referring to them all, is, that, "generally speaking, a *stranger* can *take no part at all*, and *cannot even be heard by counsel in a claim of interest in the suit*, except by the consent of all the parties;" *Calvert*, 58. It appears to me that no impartial person can review the elementary authors upon this branch of equity practice, without being satisfied that they are altogether adverse to any such right of intervention as these petitioners claim; and that, if allowed, it would introduce a rule of practice never yet adopted in our system of equity pleadings.

"I will now pass to the adjudicated cases that have been cited by the solicitors for the petitioners, and ascertain how far

62      v. 14.

490 MARYLAND REPORTS.

Gregg, et al., vs. The Mayor & C. C. of Balto.

they counterbalance the weight of authority in the elementary authors. An analysis of these cases shows that but three of them apply to this particular point of practice, viz., the case in *Mosely*, cited in the argument as *Nugent vs. Smyth; Morriss, vs. Barclay*, 2 *J. J. Marshall*, 377; and *Harrison vs. Morton*, 4 *Hen. & Mun.*, 483. The solicitors who opposed, this petition, have endeavored to show that the case in *Mosely*, is not entitled to much respect, because he was, as they allege, a reporter of little or no reputation. Another, and more effectual, mode of weakening the authority of a case, is to show that the case, itself, has not been regarded by authors and courts as entitled to much consideration. *Eden*, in his. work on *Injunctions*, speaks of this as *a strange case*, decided upon the ground of collusion between Nugent and, Smyth. And in the case of *Ball vs. Tunnard*, 6 *Madd.*, 275, where it was cited for the very purpose for which it is relied on here, viz., to show that persons interested in a cause, and not parties, should be allowed to appear and take part in the proceedings, Vice-Chancellor Leach says, these persons, "being no parties, cannot be heard, the case cited was *under very special circumstances*, and has no application here." And, when properly viewed, it appears to my mind to have as little application to the case made by these petitioners. It should be observed that this case is reported, not as it has been cited, as *Nugent vs. Smyth*, but as a *"a motion in the case, of Nugent vs. Smyth*, and *Creagh vs. Nugent & Smyth."*

" There were two cases, as the reported proceedings show; both before the master of the rolls at the same time. In one, Nugent had filed a bill against Smith and obtained an injunction to prevent him from enforcing a judgment which he had obtained against him, (Nugent,) upon his bond, upon the ground that he had a larger claim against Smyth than the amount of the bond. The bond of Nugent had, in fact, been assigned to Creagh for value, by Smyth, before he obtained the judgment; of which fact Nugent had notice. Creagh. discovering that Smyth was willing that the injunction should continue, so that his debt to Nugent should be thus satisfied, *filed a bill* in the other case *against Nugent and Smyth,*

"*having*," as the master of the rolls says, "*no other means to dissolve this injunction,* kept up by the *default of his trustee.*" The complaint in this case of Creagh, who is supposed to occupy the same position in reference to Smyth that these petitioners do in reference to the defendants, the Railroad Company, was, that Smyth neglected to put in his answer, and to move to dissolve the injunction; and that he did so in consequence of collusion between *him* and *Nugent;* all this was charged in Creagh's bill, which he brought for the purpose of getting the injunction dissolved, having as the court says "*no other means*" of accomplishing this object. The report shows that both cases were before the master of the rolls at the same time; that in delivering his opinion, he commented on the proceedings in both; that he assumed, *that "Smyth was in collusion with Nugent;"* and says that "the *difficulty* in the case arises from *Smyth* and *Creagh being foreigners,* and therefore if Nugent should pay the money, and afterwards be relieved, on the hearing of the cause, the court could not enforce a re-payment." This is stated, by the court, as the *only difficulty;* there appears to have been none made in regard to the *facts stated* in *Creagh's bill,* not even the *collusion charged:* or to his right, he not being a party to Nugent's bill, to move to dissolve the injunction in that case. This difficulty being removed as the court says, "by the offer the counsel for Mr. Creagh has made, that he will give security to appear to the original bill if Mr. Nugent will make him a party, and to abide the order of the court at the hearing," the injunction was dissolved on those terms. It cannot be seriously contended that this case, if the above view of it is correct, should have much weight with this court, as an authority, for doing what these petitioners ask. They ask, upon the simple ground that they are interested and should have been made parties originally, to be made defendants, and to be allowed to dissolve the injunction. Creagh asked leave to be made a party and to move to dissolve, after having filed a bill against both Nugent and Smyth, charging them with collusion, and having brought that bill to a hearing, and shown collusion, which in the opinion of the court was the only mode by which he, not being a party to

the case in which the injunction was issued, could get rid of the injunction; and it appears to me that this authority proves nothing more, than that *under such circumstances*, a person, affected by an injunction, issued in a cause to which he was not a party, may move to dissolve it, and of course it does not apply to the case at bar, in which the same circumstances do not exist. The case of *Morriss vs, Barclay*, on which the solicitors for the petitioners have relied, has very little application here. It is supposed to favour their position, because the court there has said, *"Norris* was *no party to the suit*, it was his *privilege* in case his interests were likely to be affected by it, to have made himself a party by petition in the *nature of a bill of interpleader."* Such a proceeding would have been very different from the course adopted by these petitioners. A bill of interpleader filed by him, would have made the other parties, plaintiffs and defendants in the original suit, defendants in his bill, he being in the attitude of complainant, and however he might have been regarded as a party to the original suit, it would not have been simply as defendant, introduced by the complainant, by way of amendment to his bill, which is what these petitioners claim here. The case of *Harrison vs. Morton*, 4 *Hen. & Mun.*, decided in Virginia in the Superior court of Chancery for the Richmond district, corresponds more closely in its circumstances with this case. There the court decided, that it would dissolve an injunction obtained by a complainant, unless he amended his bill, and made a person a party who was interested, but who had not been made a party, defendant. The motion of the individual applying to be made defendant, was opposed by *"*counsel for the *defendant"* only. For aught that appears, the *complainant was willing* to *amend* his bill: according to the report he immediately moved to amend it. When the *complainant* is willing to amend his bill, and thus let in a party, who deems it his interest to become a defendant, the court would not much if at all regard the opposition of the defendant. In the case at bar the application is resolutely resisted by the complainant. This authority, in my opinion, is by no means entitled to the weight that has been claimed for it. I have been

referred since the hearing, with the consent of the solicitors of the respective parties, to a newspaper report of recent proceedings in the case of *The Congress Rubber Co., vs. Handy & Harris*, in which Judge Grier granted the prayer of certain petitioners not previously parties, to appear and defend; but it does not appear that there was an objection made by complainant to the application, or any argument or opposition against it, but the complainants immediately made the amendment; they may have assented to the application, and of course the court would not have hesitated, to allow the amendment. These authorities are all that the uncommon industry, and research of the solicitors of the petitioners have been able to produce upon this point, and whatever effect may be claimed for them, I consider it more than counterbalanced by the decision in the case of *Ball vs. Tunnard*, already referred to, and by the action of the late Chancellor Johnson in the case of *McClellan vs. Bedford*, cited by the solicitors for the complainants. There certain persons had filed a petition asking to be made parties to the proceedings in that case, and the Chancellor says, "their petition cannot be entertained. *They cannot* in this way *become parties to the bill.*" I think I do not speak from any over-estimate of the ability and accuracy of the late Chancellor of this State, when I say that, it would require a greater array of authorities than has been produced in this case to satisfy me, that he had erred on a question of equity law or practice. I have found nothing in this case, and authorities cited, to lead me to believe that I am not bound to follow the practice in regard to petitions of this character, that he has indicated as correct and proper, nor have I, after a great deal of anxious thought and research upon this subject, been able to find in the elementary writers, or reported cases, anything to prove that courts of equity, notwithstanding their anxiety to have all persons interested in the cause before them, when they are called upon to decree, have ever devised any mode, or adopted any rule, under which the omitted parties can come in, upon their own application, as parties defendants. It has been attempted to distinguish cases of bills for injunction from ordinary bills for relief, in regard to the application of the rule

that would prevent any persons but actual parties from inter-vening in the proceedings. But when it is considered that to intervene is necessarily to become a party to the cause, and that a person cannot become a party but by objecting that there is a want of parties because he has not been joined, it will be found that, according to the settled practice, it is quite as difficult to introduce a new party into an injunction cause as into a cause of any other character. The opinion of the Court of Appeals of this State, in the case of *Lucas vs. McBlair*, 12 *G. & J.*, 16, shows that the objection that a necessary party has not been joined as defendant, cannot be urged upon the motion to dissolve, or as a reason why the injunction should be dissolved. The court says, "The objection that the State ought to have been a party to the proceedings is of no avail at the present stage of the suit. In other words, it is no ground upon which to claim a dissolution of the injunction:" and it says that "the object which the court has in view in requiring necessary parties before it, may be attained by having them brought before it at any time before the final decree is passed in the cause. And if all such persons are not made parties, the court, many times upon hearing, will not for want of them proceed to a decree." There the defendant, whose right to object for want of parties is unquestioned, was insist-ing that the injunction should be dissolved unless the State, an omitted party, should be joined. The court denied the right so to insist. Here, however, the omitted parties themselves are making the objection, and demanding a dissolution of the injunc-tion unless they are admitted, and made defendants in the cause. The court says that they have no such right. If the defendant in this case, itself, were making the objection, it could not be heard. The rule that refuses to persons not parties, claiming to be interested, the privilege of coming in by petition during the progress of the cause, to set up their interest, and show their right to be admitted, when duly considered will be found to rest on very satisfactory reasons of convenience and expe-diency. If such a privilege were allowed, courts of equity would be greatly annoyed, and their proceedings very much embarrassed by such applications. They have, therefore,

deemed it better that all questions, as to who of the various parties that ought to have been joined as defendants shall be made parties by amendment, should be reserved to be discussed once for all, upon the demurrer, or plea, or answer of the defendant, or at the hearing, believing that the rights and interests of absent parties are perfectly secure, under the safeguard of those liberal and benign rules, which require the court itself, if others have neglected it, to state the objection that necessary parties are omitted, and refuse to make a decree; which declare, that the interest of no man shall be affected by a decree, passed in a cause in which he has not been a party, and been heard in defence of his rights; and that if a decree has been passed affecting the interest of a necessary party who has not been before the court and heard in the cause, it shall for that reason, if for no other, be reserved on a rehearing, or on an appeal taken even by the party who had been improperly omitted; or if not reserved, yet it will bind none but the parties to the suit, or those claiming under them; so that all the evils of fruitless or inadequate litigation, may sometimes be visited on the successful party, in the original suit, by leaving his title still open to future question and controversy. In addition to the allegations in the petition and the prayer therein in behalf of all the petitioning stockholders, there are certain allegations in behalf of a portion of them, setting forth that the bill contains charges of fraud against them made in such manner as to stigmatize and criminate them improperly, and complaining in the character of directors; and praying that " the injunction shall be at once dissolved, unless the complainant will make the criminated directors, and among them the last named petitioners, *parties* to the bill *as defendants.*" The complaint that these petitioners make, is what is properly termed, an objection that the bill is scandalous in regard to these directors who are not parties. Assuming that it may be so regarded, which I by no means decide, I could not grant this prayer. The courts have never permitted a stranger to come in as a party defendant in a cause, because the bill may contain something that he may regard as scandalous in respect to him, the most that it has ever been asked

to do in such a case is, to refer the bill for scandal and have the offensive parts stricken out, and it is by no means settled in practice that it will do this. The inclination of the court in such cases, is to leave the complaining party to his action for libel. I must therefore pass an order refusing the prayer of these petitioners."

An order was accordingly passed, on the 25th of April 1857, refusing to grant the prayer of the petitioners, or of any portion of them, and dismissing the petition with costs, from which the petitioners appealed.

In this court, a motion was made by the appellees (the Mayor and City Council of Baltimore) to dismiss the appeal: 1st. Because the order dismissing the petition was not a final order in the nature of a final decree, but interlocutory only. 2nd. Because the right of the court to grant or to refuse the prayer of the petition was discretionary.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J., and subsequently a re-argument was ordered and had before a full court, LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*J. M. Campbell* and *Wm. H. Norris* for the appellants.

1st. As to the motion to dismiss. The ground upon which this motion is attempted to be sustained is, that the order appealed from is interlocutory and not *final*, and that the question of *parties* is a matter within the discretion of the court, and therefore not a subject of appeal. But this cannot be considered an *interlocutory* order, or decree, in any sense. Such an order or decree is one *preparatory* to a final decree, and is always passed against or with the parties *in court*. An interlocutory order against an *absent* party is an anomaly in Chancery practice not to be realized. 2 *Daniell, Ch. Pr.*, 1192, 1183. 1 *Barb., Ch. Pr.*, 326. 3 *Md. Rep.*, 555, *Ware, et al., vs. Richardson.* An order or decree, finally settling any disputed right or interest of the parties, would be a final decree and as such will warrant an appeal. 1 *G. & J.*, 309, 310, *Hagthorp vs. Hook.* Is not this order, in effect, *final*

upon the rights of these appellants to intervene and be made parties? It shuts them out as effectually as could be done. It needs not the aid of any future decree or order upon the subject—it shuts them out forever. The point finally decided against these appellants, is, that they have no right to come in and be made parties to the case. Whenever parties come into a cause they do so by virtue of some *right,* and this order *decides,* finally and effectually, that the appellants have no such right, and if they ever be admitted it will be only *ex gratia* by the court and not because of any *right* in them. If then they have a *right* to intervene, this order is a final adjudication of that question, and is therefore properly, an order from which an appeal will lie.

2nd. As to the right to intervene. On this point the appellants insist that their petition was improperly dismissed, because:

1st. The property interest in a declared dividend, and the charge of fraud in the bill against some of the petitioners, are not represented by the corporation defendant, and yet the granting of the injunction produces that immediate injury which entitles them to be parties to arrest its effects. The fact that fraud is charged against some of these appellants, of itself entitles them to come in and be made parties defendant. They must be heard to repel the charge. Where fraud is charged in the bill, as a ground of relief, it must be *proved,* and the complainant will not be entitled to a decree by proving some one or more of the facts independent of the fraud, but which might of themselves create a case under a distinct head of equity. The bill here charges fraud in direct and explicit terms, as a ground of relief, and in such a case a material allegation of this kind cannot be stricken out for scandal. 1 *Daniell's Ch. Pr.,* 402, 403. *Calvert on Parties,* 24, 25, 26. 7 *Eng. Law & Eq. Rep.,* 254, *Price vs. Berrington.* 15 *How.,* 56, *Eyre, et al., vs. Potter, et al.* 14 *Ves.,* 245, *Dummer vs. The Corporation of Chippenham.* 6 *G. & J.,* 94, *Campbell & Voss vs. Poultney, Ellicott & Co., et al.* 2 *Phillips,* 225, *Ferraby vs. Hobson. Ibid.,* 310, *Glascott vs. Lang.* 2 *Rhode Island Rep.,* 129, *Mount Vernon Bank vs.*

*Stone.* 5 *Beav.*, 82, *Williams vs. Douglass.* But, especially upon the other ground, viz., that these petitioners, after the dividend was declared had a *property interest* therein, which was not and could not be *represented* by the *corporation* defendant, we insist that this petition was improperly dismissed. For this position and to show that these appellants have a right to be made parties to this bill, we refer to 6 *Eng. Railway & Canal Cases*, 506, *Carlisle vs. South-Eastern Railway Co.* 2 *Bing.*, 393, *Davis vs. Bank of England.* 10 *Adol. & Ellis*, 437, *Coles vs. The Bank of England.* 1 *Pet.*, 309, *Mechanics' Bank vs. Seton.* 18 *How.*, 343, *Dodge vs Woolsey.* 1 *Daniell's, Ch. Pr.*, 292. *Story's Eq. Pl.*, secs., 72, 75, 76, *(c)*, 94, 95, 96, *note* 2, 103, *note* 2, 132, *note* 1, 135, *(b)*, *note* 1, 137, 138, 207, *(a)*, *note* 1. *Angell & Ames on Corp.*, secs., 151, 312, 313, 556, 560. *Calvert on Parties*, 1, 5, 11, 12, 15, 19, 25, 29, 32, 38 to 48. 4 *Johns. Ch. Rep.*, 25, *Fellows vs. Fellows.* 3 *Johns. Cases*, 311, *Hickock vs. Scribner.* These authorities show that in administering remedies for injuries and wrongs, the commanding rule in equity is the obtention of justice; to this all other rules yield, and this court adapts its remedies to the nature of the grievance, and so as to guard the rights of all parties from injury and disturbance. Whilst some of its rules are for mere judicial convenience, such as the court is bound to apply establish rights in those in whose favor they operate. The controversy in this case is between two classes of stockholders in this corporation, having diverse and opposing rights. The bill of the complainants asks that the dividend-resolution be annulled at the final hearing, and that in the meantime an injunction be granted to stop payment of these dividends to any stockholder until this suit is finally decided. On whom then does this injunction operate? Clearly upon these petitioners. The corporation which it is said *represents* them is in this respect the *debtor*, and how can a debtor represent his creditor? The very scope and object of the bill is to prevent other stockholders from getting their dividends. The corporation at first stood out, filed its answer, and with a view of getting rid of this injunction, made the motion to

dissolve. This was all that these petitioners wanted. But when the corporation stopped the proceedings on this motion, and changed their views, then, as the injunction operates injuriously upon the rights of these petitioners, they have the right to come in and move for its dissolution, and they could not make this motion without being allowed to come into the case as parties defendants.

2nd. But, assuming that the defendant does represent the owners of such property interests, in these dividends, and the parties so charged with fraud, the representation has been unfaithful or collusive, and the parties represented have a right to intervene. *Calvert on Parties*, 11, 12, 33, 35. *Story's Eq. Pl.*, sec. 76, *(c)*. *Angell & Ames on Corp.*, sec. 112.

3rd. The reason why strangers are prohibited from intervening is, that they are neither bound by the decree nor affected by the proceedings in that decree which the law notices.

3rd. As to the remedy. On this point we insist that the remedy adopted by the petitioners was the only one suited to their case, is sanctioned by precedent, and should be sanctioned if there had been no precedent, because without inconvenience to any parties, it promotes justice in the surest, simplest, cheapest form. The injunction is operating against these petitioners every moment of its continuance, and to say that they must wait till final decree, and then come in by bill, would be a denial of justice—they can come in by petition at once and get rid of that injunction. 1 *Barb. Ch. Pr.*, 566, 578, 579. *Story's Eq. Pl.*, sec. 75, 96, *note* 2, 137, 138, 208. 1 *Daniell's Ch. Pr.*, 305, 306. 3 *Do.*, 1781, and *note* 1787, 1788. *Calvert on Parties*, 34, 35. The case of *Creagh vs. Nugent & Smyth, in Mosely*, 355, is an express authority sanctioning such a proceeding as this. See also 12 *Simon*, 189, *Jones vs. Roberts*. *Eden on Inj.*, 116. 17 *How.*, 145, *Shields vs. Barrow*. 15 *How.*, 244, *Northern Indiana Rail Road Co. vs. Michigan Central Rail Road Co.* 4 *Hen. & Munf.*, 483, *Harrison vs. Morton*. 5 *Price*, 319, *Drew vs. Harman*. 2 *J. J. Marshall*, 377, *Morris vs. Bar-*

*clay.* 13 *Grattan*, 38, *Tichenor vs. Allen, et al.* 22 *Barb.*, 597, *Hubbard vs. Eames.* 24 *Barb.*, 248, *Benson vs. Mayor &c., of Albany.* 9 *G. & J.*, 193, *Hays vs. Miles.* 4 *G. & J.*, 292, *Duvall vs. Farmers Bank of Maryland.* 2 *H. & G.*, 449, *Maccubbin vs. Cromwell.* 4 *Md. Rep.*, 529, *Dent vs. Maddox.* 26 *Barb.*, 262, *Lowber vs. Mayor &c., of New York.*

*G. L. Dulany* and *J. Meredith* for the appellees:

1st. As to the motion to dismiss. The Act of 1721, ch. 14, sec. 4, authorized an appeal from *any decree* of the Chancery court. The Act of 1785, ch. 72, sec. 27, provided that appeals should be entered within nine months, from decisions, orders and decrees, in cases where appeals properly lie. The Act of 1818, ch. 193, sec. 1, confined the right of appeal to *decretal orders,* and then came the question, what is a decretal order, which would authorize an appeal? In *Thompson vs. M'Kim,* 6 *H. & J.*, 328, it was decided that an appeal would properly lie "where there is a decretal order passed upon the issue in a cause, in relation to the subject-matter in controversy, which *decides* and *settles* the question of *right* between the parties," and, in *Snowden vs. Dorsey,* 6 *H. & J.*, 115, it was held that an appeal would not lie from a mere interlocutory order, by which nothing is finally settled between the parties, which is only preparatory to a final decree, and is liable to be reviewed by the chancellor at any time. From this it appears that a *decretal order* meant an order in the nature of a final decree, and the same definition is given to it in 2 *Daniell's Ch. Pr.*, 1192, 1198. The Act of 1830, ch. 185, declares that no appeal shall lie from any decree or order of the Chancery court, unless it be a final decree, or order in the *nature of a final* decree. Under this Act, an order authorizing an appeal, must *finally settle* some right of the litigating parties; must be an order pleadable in bar to another suit. 4 *Gill,* 38, *Wheeler vs. Stone.* 1 *G. & J.*, 310, *Hagthorp vs. Hook.* By these Acts of Assembly and decisions, it is settled that an appeal will not lie from an *interlocutory order.* What, then, is such an order? It is an order made in the progress of the

cause, either before or after the hearing, which is not final, but leaves the matter open for a future hearing. 2 *Daniell Ch. Pr.*, 1192. Can there be a doubt, in view of these authorities, that the order from which this appeal is taken, is but interlocutory? What right between the parties does it settle? The controversy in the case is as to the legality of the extra dividend resolution. Does this order touch that question? It was not even final in regard to the application itself, for though the petition was dismissed, the question of parties was still open to the further consideration of the court below. In the further progress of the cause, the judge below may reconsider this order and admit the appellants as parties. The company may demur for want of parties, or amend, and the judge himself, at the final hearing of the cause, may take objection for want of parties, and refuse to decree until the proper parties are made. 12 *G. & J.*, 14 to 16, *Lucas vs. McBlair.* To show that an appeal will not lie from this order, we refer, in addition, to the cases already cited, to 12 *G. & J.*, 275, *Clagett vs. Crawford;* 3 *Gill*, 388, *State, use of Boone vs. Burch;* 3 *Md. Rep.*, 555, *Ware vs. Richardson;* 7 *G. & J.*, 109, *Boteler & Belt, vs. State use of Chew & Co.;* 7 *Gill*, 364, *Welch vs. Davis;* 11 *Md. Rep.*, 388, *Heath, et al., vs. Irelan;* 2 *Md. Rep.*, 271, *Mitchell vs. Smith.* But, again, we insist that the question of parties is a matter of *discretion* in the court below, and from the exercise of that discretion no appeal will lie. For this we refer to *Calvert on Parties,* 19; 10 *Wheat,* 166, 167, *Elmendorf vs. Taylor;* 5 *H. & J.*, 174, *Anderson vs. The State;* 6 *H. & J.*, 151, *Hawkins vs. Jackson;* 2 *H. & G.*, 135, *Dorsey vs. Smith;* 3 *G. & J.*, 434, *Roberts vs. Salisbury;* 9 *G. & J.*, 164, *Sanderson vs. Alcock;* 8 *G. & J.*, 214, *Marshall vs. Mayor & C. C. of Balto.;* 1 *Md Rep.*, 252, *Thomas vs. Doub;* 6 *Md. Rep.*, 506, *Ellicott vs. Eustace;* 10 *Md. Rep.*, 46, *Warren vs. Twilley.*

But if the motion to dismiss shall not prevail, we then insist:

1st. That the complainants and the defendants upon the record, in the cause in which the petition was filed, and on which the order appealed from was passed, were and are the

*only proper parties. Story's Eq. Pl.*, secs. 214, 271 to 276. 2 *G. & J.*, 29, *Gibbs vs. Clagett, et al. Calvert on Parties*, 7, 8, 14, 20, 48. 18 *How.*, 331, *Dodge vs. Woolsey.* 3 *Peerre Wms.*, 311, note, *(J.)* 7 *Hare*, 114, *Bagshaw vs. Eastern Union Railway Co.* 15 *Ves.*, 159, *Le Texier vs. The Margravine of Anspach.* 2 *Madd. Ch. Pr.*, 143. 1 *Ves. & Bea.*, 550, *Whitworth vs. Davis.* 6 *Wheat*, 559, *Kerr vs. Watts.* 2 *Mason*, 197, *West vs. Randall.* 1 *Gallison*, 383, *Van Reimsdyk vs. Kane, et al.* 3 *Madd. Ch. Rep.*, 10. 1 *Pet.*, 306, *Mechanics Bank vs. Seton.* 2 *Green's Ch. Rep.*, 120, *Vanderpool vs. Davenport's Exc'r.* 12 *Md. Rep.*, 443, *Wright vs. Santa Clara Mining Association.* 1 *Turner & Russell*, 297, *Jones vs. Garcia Del Rio.*

2nd. That according to the established practice of courts of equity, no person, not made a party to the cause by bill of complaint, can be, on his own motion or application, admitted as a party, except by the consent of both complainant and defendant, and this rule of practice is especially applicable to cases of injunction. 1 *Russell & Mylne*, 69, *Bozon vs. Bolland.* 7 *Simons*, 290, *Att'y General vs. Pearson, et al.* 1 *Hare*, 413, *Dyson vs. Morris.* 6 *Eng. Railway Cases*, 517, 518. 6 *Madd. Ch. Rep.*, 275, *Ball vs. Tunnard.* 17 *How.*, 145, *Shields vs. Barrow.* 1 *Bland*, 292, *Owings' Case. Calvert on Parties*, 90, 113. *Story's Eq. Pl.*, secs. 75, 77. 12 *G. & J.*, 1, *Lucas vs. McBlair.* See, also, the decision of Chancellor Johnson in the case of *McClellan & wife vs. Bedford*, referred to in the opinion of the court below. 1 *Daniell's Ch. Pr.*, 339; 16 *Ves.*, 356, *Innes vs. Jackson.* The only decision to the contrary, is that cited from *Mosely*, which has been pronounced a book of but little or no authority, in 5 *Burr.*, 2629, and in 5 *Term. Rep.*, 560.

3rd. That the petitioners have no interest in the object of the pending suit, except as members of the corporation defendant. That if they have any interest as shareholders, it is a consequential interest which gives them no right to intervene as parties. That the interest of the petitioners, of whatever nature they may be, are sufficiently and substantially represented by the defendants on the record; and if not so represented

they cannot be prejudiced by any decree that may be made in the cause, not being bound by it, but are at liberty to assert and protect their rights by a supplemental bill, in the nature of a bill of review, or by an original bill for relief. In support of these positions we refer to *Mitford's Pl.*, 196, 397; *Calvert on Parties*, in 17 *Law Lib.*, 14, 33, 34, 35; 7 *Eng. Railway Cases*, 932; 2 *Johns. Ch. Rep.*, 197; *Van Vechten vs. Terry;* 11 *Ves.*, 420, *Adair vs. New River Co.;* 2 *Atk.*, 145, *Vernon vs. Blackerby;* 2 *Sch. & Lef.*, 210, *Devonsher vs. Newenham;* 3 *Mason*, 319, *Wood, et al., vs. Dummer, et al.;* 2 *Swans.*, 291, *Meux vs. Maltby;* 7 *Hare*, 114; 8 *B. Monroe*, 340, *Singleton vs. Singleton; Story's Eq. Pl.*, secs. 94, 99, 140, 208, 214, 247; 2 *Sim. & Stu.*, 91, *Weld vs. Bonham*.

4th. That no fraud, moral or legal, is charged by the bill against the stockholders of the railroad company, and so far as the directors are concerned, the answer of the city to the petition of the appellants, denies the charge of fraud, as alleged in the petition. But, even if the bill could be construed to allege fraud against the stockholders or any of them, such allegation would not entitle them, or any of them, to become parties to the cause, for the purpose of defence or vindication. 4 *Madd. Ch. Rep.*, 252.

5th. That there is no charge in the petition, nor any proof in the proceedings, of collusion between the complainants and defendants, as against the petitioners or the stockholders of the company. But that if both charge and proof existed in fact, the remedy of the petitioners is by a bill of review, or original bill for relief, and not by becoming or being made parties in the original cause. *Story's Eq. Pl.*, sec. 426.

*Note.*—In the course of the argument, the power of the railroad company, under its charter, to declare this dividend, was discussed, but that portion of the argument is omitted.

TUCK, J.—The members of the court being equally divided in opinion on the motion to dismiss the appeal, and also on the propriety of the order appealed from, it must be affirmed. *Hatton vs. Weems*, 12 *G. & J.*, 83.

Gregg, *et al.*, *vs.* The Mayor & C. C. of Balto.

Under such circumstances it is not usual to file opinions, but, in view of the public and private interests involved, and the importance of having the asserted power of the railroad company to declare dividends of this kind, examined and passed upon, in a cause which, by its proceedings, shall embrace all persons interested in having that question authoritatively determined; and supposing that the progress of the cause may be facilitated, I have felt myself warranted in expressing my opinion on the question of parties, which has been fully argued, and which, possibly, may come before us again, that being the only point now before us for review.

I have carefully examined the cases and books of practice and pleading, referred to in argument, and have come to the conclusion that the opinion of the court below correctly states the manner of making new parties in equity, and being of opinion that this is not a case where, in the absence of precedents, one should be made by granting the prayer of the petitioners, the order appealed from should be affirmed. The suggestions as to inconvenience, and probable loss, resulting from the circuity of proceeding, that the order may occasion, if it should appear, ultimately, that the appellants are entitled to receive the dividends they claim, are entitled to great consideration, and if I felt authorized to yield my assent to such arguments, I have every disposition to do so; but the same may be said in many other cases. Indeed, in most, there might be devised a short, easy and expeditious method of arriving at judicial conclusions, and much loss prevented by avoiding the delays incident to proceedings as now conducted, but experience has taught that it is safer, looking to the ends of justice and orderly procedure in our courts, to adhere to the practice and forms which have obtained from the earliest times. Otherwise, and this, I am admonished, might be the result here if the prayer were granted, embarrassment and confusion may be the consequence. Rules of practice are a part of the law governing all judicial tribunals. When parties sue, they form their pleadings and conduct their causes with reference to such principles, and have a right to require that they shall be observed on the opposite side. There may be cases

in which they should be relaxed or departed from. Some such have been cited, but they are exceptions to the general practice, where no other remedy was open to the parties. The allegation of fraud and collusion in the petition having been denied, I treat the question as if it had not been made.

But, while I agree that the appellants had no right to be made parties in the manner proposed, and that, therefore, there was no error in dismissing their petition, I am of opinion that no decree can properly pass adversely to the alleged rights of stockholders in the predicament of the appellants; that is, of such as claim the dividends, unless they, or a sufficient number of them to represent that interest, are made parties. This I consider a plain proposition. The corporation does not represent the appellants any more than it does the complainants. The President and Directors bind the members, when acting within the charter powers; if they go beyond, the members may enjoin them, and the bill here is framed on the supposition that the dividends are not warranted by the charter. If some insist that they are within the charter, shall they not be heard in like manner? No one will deny that the appellants might have filed a bill claiming payment of the dividends, or that the company might have been compelled, by decree, to issue certificates of debt according to the order declaring the dividends, if the court had found it to have been properly made. It is not merely a controversy between these complainants and the company, but between the complainants and all stockholders claiming the dividends, the company being the holder of the common funds of all. As among the corporators, it does not represent all of them, when they have opposite views of the company's powers, one set denying and the other affirming that the act in question has been performed in the exercise of corporate functions, and claiming the benefits and fruits thereof.

It is the practice, where the persons in interest are numerous, to implead some as the representatives of all in the same interest, and thereby bind them all; if there be diverse interests and claims, all should be represented. If complainants

64    v. 14.

choose to proceed against some, omitting others who have a different interest, they may do so, but at the peril of obtaining a decree that will be of no·effect as to those who are not parties, or, if the want of proper parties be disclosed at the trial, of having their bill dismissed, or the cause laid over on that account. In such a case, if a final decree be passed, and the want of proper parties appeared on the record, it would be the duty of this court, on an appeal from such decree, to reverse it or remand the cause, under the Act of 1832, ch. 302, sec. 6. If this record were before us now on such an appeal, I could not hesitate to say that, according to that Act of Assembly, it should be remanded for further proceedings, not because I think that the appellants have a right to the dividends, for that question I have not considered, but because, claiming to be interested, as they do, no decree could be passed, consistently with well known principles of equity, affecting their alleged rights, unless they had had an opportunity of being heard in defence of those rights; and this, as well for the purpose of giving full and complete justice between all persons claiming an interest in the subject-matter, as to protect the corporation itself, whose duty it might be to obey the decree, against further litigation with such claimants as had not been made parties.

Le Grand, C. J.—With the aid I could obtain from the very able arguments of counsel, and from my own study and reflection, I prepared a statement setting out, at large, my views in regard to the case; but, inasmuch as a majority of the court did not concur in them, it would be useless to file it in the cause, the more particularly so, as a majority of the court agree that the course of procedure indicated in the opinion of Mr. Justice Tuck, will, in the end, bring to a determination the rights of all parties claiming to be interested in the subject matter of the controversy.

I content myself, therefore, with merely stating what is understood to be the effect of the opinions of a majority of this court. It is this: that before final decree, these petitioners

ought to be heard as parties, and that if they be not, and are shown to be prejudiced because of the refusal, on appeal, after final decree, the decree will be held to be of no avail as against them, and will be reversed or remanded, under the Act of 1832, chapter 302, that the proper parties may be made.

*Order affirmed by a divided court.*

